AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 2-12-2020)

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

| | FILED _____ LODGED |
| --- | --- |
| | _____ RECEIVED |

Jul 29, 2022

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

In the Matter of the Search of Information associated
with 928-327-8573 (TT3), in the custody of T-Mobile,
for Investigation of 21 U.S.C. §§ 841, 846, and Other
Offenses

)
)
)
)
)

Case No.  MJ22-5139

## APPLICATION FOR A SEARCH WARRANT AND PEN-TRAP ORDER

I, Steven Meyer, a federal law enforcement officer or an attorney for the government, request a search warrant and pen-trap order, and state under penalty of perjury that I have reason to believe that on the person or property described in Attachment A located in the Western District of Washington, there is now concealed property and evidence described in Attachment B. This Court has authority to issue these warrants under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

The basis for the search under Fed. R. Crim P. 41(c) is *(check one or more)*:

- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
| --- | --- |
| 21 U.S.C. §§ 841, 846 | Possession with Intent to Distribute Controlled Substances, Conspiracy |

The application is based on the facts set forth in the attached affidavit, which is incorporated herein by reference with all attachments and exhibits. Pursuant to 18 U.S.C. § 3123(a)(1), Exhibit 1 to the affidavit includes a certification from an attorney from the government that the requested information is relevant to an ongoing criminal investigation.

☒ Delayed notice of 90 days (give exact ending date if more than 30 days: <u>October 27, 2022</u>) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 41, this warrant is presented by:
☒ by reliable electronic means; or ☐ telephonically recorded

_____
*Applicant's signature*

Steven Meyer, Special Agent
*Printed name and title*

☐ The foregoing affidavit was sworn before me and signed in my presence, or
☒ The above-named officer provided a sworn statement attesting to the truth of the contents of the foregoing affidavit by telephone.

Date: <u>July 29, 2022</u>

_____
*Judge's signature*

J. Richard Creatura, United States Chief Magistrate Judge
*Printed name and title*

City and state:  <u>Tacoma, Washington</u>

USAO No. 2022R00847

### AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR
### A SEARCH WARRANT AND PEN-TRAP ORDER

STATE OF WASHINGTON        )
                           )        ss
COUNTY OF PIERCE           )


I, Steven Meyer, a Special Agent with the Drug Enforcement Administration, Seattle, Washington, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1.        In January of 2022, the Bremerton Police Department (BPD) and DEA Tacoma began investigating local drug distributors in Kitsap County (Distributor 1 and Distributor 2, collectively, the Distributors) who were sending narcotics through the mail using the United Postal Service (UPS). [1] The Distributors received their narcotics supply from Oscar RUIZ, who is located in Arizona.

2.        I make this Affidavit in support of an Application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for authorization to obtain real time GPS location information with an integrated Pen Register and Trap and Trace order for the following cellular telephone used by an individual suspected to be involved in criminal activity, namely narcotics trafficking and related offenses:

**(928) 327-8573**, with a subscriber name of CHEKO LL at 4136 West Maryland Avenue, Phoenix, Arizona 85019[2], activated on January 15, 2021, and service

---

[1] The identities of the Distributors are known to me. To protect their identities and to prevent witness tampering, I have identified them as 1 and 2. Both individuals have prior drug distribution felonies. Neither individual is cooperating with the Government at this time, but both have been indicted in the Western District of Washington for their part in the conduct at issue here.

[2] This address has been identified as Target Location 2. Along with Target Location 1, and Target Vehicle 1, a Search Warrant is pending in the District of Arizona. For continuity, the locatiosn and vehicle will be refefferd to as TL1, TL2, and TV1 in this affidavit.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

provided by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey (hereinafter referred to as Target Telephone 3 or **TT3**)[3]. **TT3** is described herein and in Attachment B. Agents believe **TT3** is currently being used by Oscar RUIZ, who agents believe is conspiring with members of the Washington-based DTO (The Distributors).

ECPA

3.     The Court has jurisdiction to issue the proposed warrant under the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

Pen Register Act

4.     Because this warrant seeks the prospective collection of information that falls within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to comply with the Pen Register Act, 18 U.S.C. §§ 3121-3127.

5.     The Court has jurisdiction to issue the requested pen-trap order because it is a "court of competent jurisdiction" under 18 U.S.C. § 3122(a)(2). Specifically, the Court is a district court of the United States that "has jurisdiction over the offense being investigated." 18 U.S.C. § 3127(2)(A)(i).

6.     This application includes all the information required by the Pen Register Act. *See* 18 U.S.C. §§ 3122(b) & 3123(a)(1). Namely, Exhibit 1 to this application is a certification from Assistant United States Attorney Hillary Stuart that (1) identifies the

---

[3] Agents previously identified Distributor 1 as the user of TT1, Distributor 2 as the user of TT2, and Oscar RUIZ as the user of **TT3**. In the case against the Distributors, on March 7, 2022, a United States Magistrate Judge authorized GPS tracking and PEN data collection on Distributor 1's TT1, Distributor 2's TT2, and Oscar RUIZ's **TT3**. Agents have been granted renewed authorization on TT1, TT2, and **TT3** as the investigation has progressed. While the case against RUIZ is a new case, we have maintained the identifiers for TT1, TT2, and **TT3** for continuity.

Affidavit of Special Agent Steve Meyer – 2
USAO No. 2022R00847

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

DEA as the law enforcement agency conducting the investigation and (2) certifies the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency. 18 U.S.C. § 3122(b). The Assistant United States Attorney is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

7.     A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3). A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

8.     In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls. Similar principles apply to other kinds of wire and electronic communications such as emails, text messages, connection logs, and data transfers. The prospective location data sought in this application constitutes "dialing, routing, addressing, and signaling information" covered by the Pen Register Act. Accordingly, the requested warrant will record, decode, and/or capture dialing, routing, addressing, and signaling information associated with the Target Telephone without geographic limit.

9.     The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order through Attachment B, of the requested warrant that T-Mobile, and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of this warrant furnish, upon service of the warrant, information, facilities, and technical assistance necessary to install the pen/trap, including installation and operation of the pen-trap unobtrusively and with minimum disruption of normal service. Any entity providing such assistance shall be reasonably compensated by the DEA, pursuant to 18 U.S.C. § 3124(c),

for reasonable expenses incurred in providing facilities and assistance in furtherance of the warrant.

10.    **Through this application, the United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).**

## AGENT BACKGROUND

11.    I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7). Specifically, I am a Special Agent with the DEA, and have been since March 2017. I am currently assigned to the Seattle Field Division, Tacoma Resident Office. Prior to my employment with the DEA, I worked as a Uniformed Officer with the Secret Service in Washington, D. C. from June 2006 to April 2009. I received formal training at the DEA Basic Agent Training in Quantico, Virginia. The four-month Basic Academy included comprehensive, formalized instruction in, among other things: basic narcotic investigations, drug identification and detection, familiarization with United States narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance, and undercover operations.

12.    During the course of my law enforcement career, I have been involved in investigations of numerous criminal offenses, including the offenses involved in the current investigation. I have participated in criminal investigations of illicit drug trafficking organizations, ranging from street-level dealers to major dealers, to include Mexico-based drug trafficking organizations. These investigations have also included the unlawful importation, possession with intent to distribute, and distribution of controlled substances; the related laundering of monetary instruments; the conducting of monetary transactions involving the proceeds of specified unlawful activities; and conspiracies associated with criminal narcotics offenses.  These investigations have included use of the following investigative techniques: confidential informants; undercover agents;

Affidavit of Special Agent Steve Meyer – 4
USAO No. 2022R00847

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHIGTON 98402
(253) 428-3800

analysis of pen register, trap and trace, and toll records; physical and electronic surveillance; wiretaps; and the execution of search warrants. I have had the opportunity to monitor, listen to, and review transcripts and line sheets (prepared by linguists) documenting the content of intercepted conversations involving the trafficking of cocaine, heroin, methamphetamine, fentanyl, and other narcotics, by persons who used some form of code to thwart law enforcement. I have also interviewed defendants at the time of their arrests and have debriefed, spoken with, or interviewed numerous drug dealers or confidential sources (informants) at proffer interviews who were experienced in speaking in coded conversations over the telephone. I have gained knowledge regarding the various methods, techniques, codes, and/or jargon used by drug traffickers in the course of their criminal activities, including their use of cellular telephones and other electronic devices to facilitate communications while avoiding law enforcement scrutiny.

13.     I have authored, planned, and participated in the execution of search warrants authorizing the search of locations associated with drug traffickers and their co-conspirators, such as residences, businesses, storage facilities, and vehicles. Additionally, I have authored and supervised the execution of dozens of tracking warrants, including multiple federal tracking warrant affidavits for vehicles and cellular telephones. I have testified at grand jury proceedings and written reports in the course of investigations. These investigations have resulted in numerous state and federal prosecutions of individuals who have possessed, imported, or distributed controlled substances, including methamphetamine, heroin, cocaine, suspected fentanyl pills, as well as the seizure of those illegal drugs and the proceeds from their sale.

14.     The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement personnel; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained

Affidavit of Special Agent Steve Meyer – 5
USAO No. 2022R00847

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHIGTON 98402
(253) 428-3800

through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the Application for a search warrant and pen register/trap and trace device, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## KNOWLEDGE BASED ON TRAINING AND EXPERIENCE

15.     Based upon my experience and training with the DEA as well as conversations I have had with other agents and law enforcement officers who specialize in narcotics, gang, and firearms investigations, I am familiar with the methods, tactics, and techniques utilized by gang members/associates and narcotics traffickers.

16.     Based on my training and experience, I know drug traffickers often require the use of one or more communication facilities to negotiate times, places, schemes, and manners for coordinating their criminal activites, including drug trafficking, firearms trafficking, and other violent acts. I also know drug traffickers often use fraudulent information to subscribe to communication facilities, and frequently change communication facilities to thwart law enforcement efforts to intercept their communications.

17.     Based on my training and experience, and my discussions with other experienced officers and agents involved in gang, firearms, and drug investigations, I know that drug dealers use cellular telephones as a tool or instrumentality in committing their criminal activity. They use them to maintain contact with their associates. They prefer cellular telephones because they can be purchased without the location and personal information that land lines require. They can be easily carried to permit the user maximum flexibility in meeting associates and avoiding police surveillance. They can also be passed between members of a gang or drug conspiracy to allow substitution when one member leaves the area temporarily.

18.     The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN; Mobile Identification Number, or MIN; International Mobile

Affidavit of Special Agent Steve Meyer – 6
USAO No. 2022R00847

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHIGTON 98402
(253) 428-3800

Subscriber Identity, or IMSI; or International Mobile Equipment Identity, or IMEI are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify the telephone. This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as a part of a package, and to confirm if the telephone was contacted by a cooperating source or was intercepted on a wiretap here or in another district.

19.     Based on the facts set forth in this Affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841, 846 have been committed, are being committed, and will be committed by the RUIZ. There is also probable cause to believe that the RUIZ is using **TT3** to facilitate their criminal activities and that the whereabouts of **TT3** over time and the location information described in Attachment B will constitute evidence of those criminal violations and will lead to the identification of locations where the RUIZ resides and frequents. Obtaining the information sought in this Affidavit is necessary to further the investigation into these offenses.

## APPLICABLE LAW

20.     Title 21, United States Code, Section 841 provides for criminal penalties for the distribution of, and possession with intent to distribute, controlled substances. Title 21, United States Code, Section 846 provides for criminal penalties for those who conspire to commit these acts.

## STATEMENT OF PROBABLE CAUSE

**Summary of DEA Investigation of the Distributors and Oscar RUIZ.**

*Seizure of First UPS Package*

21.     On January 27, 2022, Bremerton police officers were dispatched to a UPS facility in Bremerton, Washington to take custody of suspected narcotics recovered from a package.  The suspected narcotics appeared to be shards of clear crystalline substances in clear plastic wrapping. The package listed a sender as Distributor 1, and his address was confirmed with the department of licensing. The UPS employee had concerns about

Affidavit of Special Agent Steve Meyer – 7
USAO No. 2022R00847

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHIGTON 98402
(253) 428-3800

Distributor 1's suspicious behavior while mailing the package and UPS personnel opened the package and identified the suspected narcotics. By policy, UPS reserves the right to inspect packages before shipping and may open them. Police confirmed Distributor 1's identification with the employee, and the employee also stated he had been at the facility previously and had sent packages of similar dimensions to multiple locations in North Dakota. Based on officers' training and experience, they believed the narcotics to be methamphetamine. The suspected methamphetamine was not field tested due to the possibility of the presence of Fentanyl. The total weight of the package was approximately two pounds.

*Seizure of Second UPS Package:*

22.     On January 28, 2022, Bremerton police officers were again dispatched to the UPS facility in Bremerton, Washington to take custody of suspected narcotics recovered from a package. Upon arrival, officers took custody of the suspected narcotics and were told by UPS personnel that the package had been sent by the same group that had attempted to send narcotics the previous day. Officers learned that in this case the package had been sent by a heavy-set female wearing a mask. The female provided the name Distributor 2 and used a credit card number under the same name. A search of DOL records showed that the address Distributor 2 gave matched the DOL records. The package was addressed to an individual in Bismarck, North Dakota. UPS personnel took photos of Distributor 2 inside the facility and identified a green Nissan Titan truck, they were driving. A search of the license plate in law enforcement databases showed that the vehicle was registered to Distributor 2.

23.     Following that, UPS personnel told officers that Distributor 2 was receiving packages from multiple locations, to include Arizona. Based on my training and experience, I know that drug distributors in Arizona supply thousands of suspected fentanyl pills to drug customers nationwide. Officers transported the package, with the suspected narcotics, back to the BPD office where everything was photographed, weighed, and then secured in drug storage. Based on their training and experience,

1  officers concluded that the narcotics were methamphetamine and fentanyl pills.  The

2  suspected methamphetamine was wrapped in a plastic wrap bundle and weighed

3  approximately one pound. The suspected fentanyl pills were in a clear plastic bag and

4  weighed approximately 112. 5 grams. Officers did not field test the narcotics for fear of

5  exposure to fentanyl.

6  *Administrative Subpoena served at UPS Store*

7        24.    On December 1, 2021, Distributor 1 shipped a package to Manuel RUIZ-

8  Vazquez at 4136 West Maryland Avenue, Phoenix, Arizona 85019 (TL2)[4]. Distributor 1

9  listed his DOL address with TT1[5] as a contact number. Manuel RUIZ-Vazquez's number

10  was listed as 928-327-8573 (**TT3**). Phone toll analysis on TT1 showed the phone was in

11  contact with **TT3** on December 1, 2021.  Additionally, Distirbutor 1 sent another

12  package, utilizing TT1 as a contact number, to Eric PALERMOS at 1533 1st Street SE,

13  Minot, North Dakota 58701. Agents also learned that Distributor 1 had rented a room at

14  the Staybridge Suites Minot on December 4, 2021 and stayed one night. Based on my

15  training and experience, phone toll records, and hotel records, I believed that Distributor

16  1 possibly sent drug proceeds to Manuel RUIZ-Vazquez at TL2 on December 1, 2021

17  and that same day sent narcotics to a drug associate in Minot, North Dakota. I further

18  believed at that time, based on package information, that RUIZ-Vazquez was the user of

19  **TT3**.

20        25.    Based on the UPS information, agents conducted further database queries

21  and open-source searches into **TT3**. **TT3** was listed as a phone number for Manuel

22  RUIZ-Vazquez on a package sent from Distirbutor 1 to RUIZ-Vazquez at TL2 in

23  December 2021. Commercial database queries indicated Lorenia RUIZ, Manuel RUIZ-

24  Vazquez, and Oscar RUIZ were all associated with TL2. Agents believed Oscar RUIZ

25  was the son of Lorenia RUIZ and Manuel RUIZ-Vazquez.

26

27  _____

28  [4] TL2
   [5] Distirbutor 1 is the user of TT1, Distributor 2 is the user of TT2, and Oscar RUIZ is the user of **TT3**.

Affidavit of Special Agent Steve Meyer – 9
USAO No. 2022R00847

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

26. On December 8, 2021, Distributor 2, using her DOL address and TT2 as a contact number, shipped a package to Martin RUIZ-Vazquez at TL2. The contact number for Martin RUIZ-Vazquez on the package was Distributor 1's TT1. Phone toll analysis of Distributor 1's TT1 showed it was in contact with **TT3** on December 8, 2021. Based on my training and experience, and the package information, I believed that Distributor 2 mailed drug proceeds to Martin RUIZ-Vazquez on December 8, 2021.

27. On December 20, 2021, UPS records indicate an unknown individual shipped a package from Scottsdale, Arizona to Distributor 1 at his DOL address. Alaska Airlines records showed that Distributor 1 flew from Seattle, Washington to Phoenix, Arizona on December 20, 2021. Phone toll records also indicated that TT1 was in contact with **TT3** on December 20, 2021. Based on my training and experience, phone toll records, and flight records, I believed that Distributor 1 (TT1) flew to Phoenix on December 20 in order to pick up narcotics from RUIZ-Vazquez or one of his associates. I further believed that Distributor 1 picked up the narcotics and traveled to the UPS location in Scottsdale, Arizona where he then mailed the narcotics to his DOL address in Bremerton, Washington.

28. On January 17, 2022, Distributor 1 sent two packages from the UPS store at 5156 West Olive Avenue, Glendale, Arizona 85302 to "Ron COOPER" at Distributor 1's DOL address. In February 2022, agents from DEA Phoenix served an administrative subpoena at 5156 West Olive Avenue and received a receipt from UPS personnel signed by Distributor 1 that confirmed the transaction. Alaska flight records from January 17, 2022 show that Distributor 1 flew to Phoenix from Seattle at 6:00 a. m. and flew back to Seattle the same day at 5:40 p.m. Phone toll analysis showed **TT3** and TT1 were in contact on January 17, 2022. Based on my training and experience, flight records, and phone toll analysis, I believed that Distributor 1 flew to Phoenix in order to pick up narcotics from Manuel RUIZ-Vazquez or one of his associates. I further believed that Distributor 1 shipped the narcotics to his DOL address in Bremerton, Washington.

Affidavit of Special Agent Steve Meyer – 10
USAO No. 2022R00847

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHIGTON 98402
(253) 428-3800

29.     On January 25, 2022, Distributor 1 shipped a 2.8 pound package from the UPS location at 2303 North 44th Street, Suite 14, Phoenix, Arizona to Distributor 1 at his DOL address and listed TT1 as a contact number. In February 2022, agents with DEA Phoenix served an administrative subpoena at 2303 North 44th Street and received documentation that indicated Distributor 1 had mailed the package from that location. Alaska Airlines flight records indicated that Distributor 1 took a flight from Phoenix to Seattle on January 25, 2022. Phone toll analysis on TT1 showed that Distributor 1 was in contact with **TT3** on January 25, 2022. Based on my training and experience, phone toll records, and flight information, I believed Distributor 1 traveled to Arizona on January 25, 2022 in order to pick up narcotics from Manuel RUIZ-Vazquez or one of his associates. I further believed that Distributor 1 mailed the narcotics from Arizona to his DOL address in Bremerton, Washington.

30.     As listed above, packages were seized on January 27, 2022 and January 28, 2022 which were sent by the Distributors and intended to go to North Dakota. Based on my training and experience, I believed the narcotics seized on January 27, 2022 and January 28, 2022 were part of the shipment of drugs that Distributor 1 mailed from Arizona on January 25, 2022.

31.     On February 2, 2022, agents were contacted by UPS personnel and told that the Distributors had come to their location at 8000 Werner Road, Bremerton, Washington, and asked about the status of the packages sent on January 27, 2022 and January 28, 2022.

32.     On February 10, 2022, UPS personnel contacted agents about a package that was sent on February 3, 2022 from an unknown individual at the UPS Store at 3370 North Hayden Road, Suite #123, Scottsdale, Arizona to "Ron COOPER" in Bremerton, Washington. The package weighed approximately 16.7 pounds. Following that, agents looked into air or rental information pertaining to the Distributors. As a result, they observed that Distributor 2 had rented a vehicle from the SeaTac Airport on February 4, 2022 and returned it on February 11, 2022. The vehicle had been driven 1055 miles.

Affidavit of Special Agent Steve Meyer – 11
USAO No. 2022R00847

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHIGTON 98402
(253) 428-3800

1  Based on my training and experience, UPS records, and rental information, I believed

2  that the Distributors had received approximately 16.7 pounds of narcotics on February 3,

3  2022. I further believed that they transported the suspected narcotics to drug customers at

4  an unknown location.

5  *Identification of Oscar RUIZ's Association to* **TT3**

6      33.     Phone toll analysis of **TT3** showed a listed subscriber for the phone of

7  "Cheko LL" at TL2. A review of social media platforms led to the identification of

8  Instagram accounts for Oscar RUIZ and his suspected girlfriend, Kimberly BERRONES.

9  The Instagram account for RUIZ was Back2thejungle_oscar, Chekko_602.  The

10 Instagram account for Kimberly BERRONES was listed as Back2jungle_amaanikb.

11 Both are associated with the "Back 2 the Jungle Kennels," a dog breeding business.

12 Additionally, agents learned Oscar RUIZ used the moniker "Garcia Chekko." Based on

13 their training and experience, phone toll analysis on **TT3**, and social media research,

14 agents suspected Oscar RUIZ's association with an Instagram moniker that included

15 "Chekko" and the subscriber for **TT3** being listed as "Cheko LL" indicated that Oscar

16 RUIZ was probably the actual user of **TT3**.

17 *Distributor 1's Trip to Las Vegas in February 2022*

18      34.     In late February 2022, agents conducted phone toll analysis on TT1 and

19 learned the phone had been in contact with a number for Alaska Airlines on February 10,

20 2022. Shortly thereafter, agents sent an administrative subpoena to Alaska Airlines for

21 any information regarding Distributor 1. Distributor 1 took Alaska flight 1116 on

22 February 19, 2022 from Seattle, Washington to Las Vegas, Nevada.

23      35.     Agents conducted phone toll analysis on **TT3** and learned that it had a top

24 contact of 310-560-4328. The 310-560-4328 number is subscribed to Lorenia RUIZ.

25 Agents also learned that Lorenia RUIZ was the registered co-owner of a 2021 Chevrolet

26 Silverado truck, with Arizona plate JTA4RG, and registered address of TL2. Following

27 that, agents researched the DEA National License Plate Reader (LPR) database and

28 learned Lorenia RUIZ's 2021 Chevrolet Silverado truck, Arizona plate JTA4RG, hit on

Affidavit of Special Agent Steve Meyer – 12
USAO No. 2022R00847

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHIGTON 98402
(253) 428-3800

northbound (NB) US-93 (toward Las Vegas) on February 19, 2022 at 3:48 p.m. Pacific Daylight Time (PDT). This LPR is approximately 100 miles southeast of Las Vegas, Nevada.

36.     Distributor 1's flight landed in Las Vegas on February 19, 2022 at 9:45p.m. Stacey RUIZ, an individual associated with TL2, used the number 602-600-9602 to make an eleven second call to 702-248-1111 on February 20, 2022.  702-248-1111 is the Nellis Taxi Cab Service phone number in Las Vegas, Nevada. Based on Distributor 1's flight history, LPR data from February 19, 2022, and phone toll analysis, agents believed that Distributor 1 and, either Oscar RUIZ or one of his associates, met in Las Vegas on drug business.

37.     According to an Instagram video post on February 26, 2022 for a separate account of the dog breeding business, Back2thejunglekennels, Kimberly BERRONES announced a plan to build a ranch for horses and dogs. In the video, a black pickup truck, appearing to be a Chevrolet, was also visible. Agents were unable to observe a license plate during the video but believed the truck was very similar to Lorenia RUIZ's 2021 Chevrolet Silverado truck, Arizona plate JTA4RG, observed on the DEA LPR earlier in the month. Agents conducted a search of the Arizona Motor Vehicle Department (MVD) and it listed an address of 42524 West Earl Drive, Tonopah, Arizona 85354 (TL1) for RUIZ's girlfriend. Based on the landscape features in the video, agents believed it was shot at TL1.

*Distributor 1 Travels to Arizona – March 2022*

38.     On March 7, 2022, a United States Magistrate Judge authorized GPS tracking and PEN data collection on Distributor 1's TT1, Distributor 2's TT2, and Oscar RUIZ's **TT3**. A few days later, agents began receiving location information on TT1, TT2, and **TT3** and learned that Distributor 1 was in the vicinity of Bismarck, North Dakota, Distributor 2 was in the vicinity of Orlando, Florida, and Oscar RUIZ was west of Phoenix, Arizona. Specifically, location information for Oscar RUIZ's **TT3** consistently indicated the device was in the vicinity of TL1.

Affidavit of Special Agent Steve Meyer – 13
USAO No. 2022R00847

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

39.     On March 10, 2022, agents reviewed PEN data from **TT3** and observed the phone had a twenty-five-minute call with a 564-546-0759 (TT4) at 4:31 p.m. Pacific Daylight Time (PDT). Agents knew that area code "564" was associated with Washington. Following that, agents requested phone toll data on TT4 and learned the phone had been activated on March 6, 2022 and was subscribed to David Burkhalter in Bremerton, Washington 98312. The subscriber information for TT4 listed Distributor 1's TT1 as a work and home phone. Additionally, based on a search of law enforcement databases, agents learned the residence at the subscriber address had been purchased by Distributor 1 on December 6, 2021 and that Distributor 2 had paid property tax on the location. Agents conducted additional phone toll analysis on TT4 and learned that on March 6, 2022 (the day the phone was activated) the phone had been in contact with known Distributor 1 associates.

40.     On March 11, 2022, agents checked location information on TT1 and observed the phone was moving west from Bismarck, North Dakota. Agents continued to monitor TT1's movement throughout the day as it moved southwest from Bismarck to Rawlins, Wyoming. Agents checked PEN data for TT1 and learned the phone had been in contact with **TT3** at 8:56 p.m. PDT for a three minute and forty-four second call. PEN data from **TT3** also showed phone contact with TT4 at 9:22 a.m. PDT, a text at 10:57 a.m. PDT, a text at 8:18 p.m. PST, and two texts at 9:17 p.m. PDT and 9:18 p.m. PDT. Based on the direction of TT1's movement and PEN data activity, agents believed Distributor 1 was possibly driving to Arizona to resupply with Oscar RUIZ.

41.     On March 12, 2022, agents continued to monitor location information from TT1 and observed the phone moved from the vicinity of Rawlins, Wyoming to the vicinity of Phoenix, Arizona. Agents also checked location information for **TT3** and confirmed the phone remained in the vicinity of TL1. PEN data from March 12, 2022 showed there had been a call between TT1 and **TT3** at 8:25 a.m. PDT and texts between TT4 and **TT3** at 7:06 a.m. PDT. Additionally, at 11:14 p.m. PDT, PEN data indicated there was a call between TT1 and **TT3**.

Affidavit of Special Agent Steve Meyer – 14
USAO No. 2022R00847

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHIGTON 98402
(253) 428-3800

42.     Agents believed Distributor 1 arrived in the vicinity of Phoenix around 1:10 a.m. PDT on March 13, 2022, based on location information from TT1. Agents further believed that Distributor 1 went to the Talking Stick Resort in Scottsdale, Arizona 85256. Agents contacted the Talking Stick Resort about Distributor 1's possible stay. Talking Stick Resort personnel confirmed Distributor 1 had been at their location and produced a surveillance photo of Distributor 1 and an unidentified female.

43.     On March 13, 2022, between 9:06 a.m. PST and 10:05 p.m. PST, PEN data from **TT3** showed a call between **TT3** and TT1. There were also multiple communications between **TT3** and TT4. Based on the volume of communications between TT1, **TT3**, TT4 on March 13, 2022 and location information for TT1 and **TT3** from that day, agents did not believe Distributor 1 and Oscar RUIZ had met yet to conduct any drug business.

44.     On March 14, 2022, between 9:27 a.m. PDT and 11:27 a.m., PEN data from **TT3** showed there were calls and texts between TT1 and **TT3**. At approximately 11:23 a.m. PDT, agents observed that TT1 and **TT3** were in the same vicinity. At 12:22 p.m. PDT, all calls and texts ceased between **TT3** and Distributor 1's numbers (TT1 and TT4). Based on my training and experience, phone toll data, and location information for TT1 and **TT3**, I believed that Oscar RUIZ met with Distributor 1 at approximately 11:23 a.m. PDT in order to resupply him with narcotics. Location information from **TT3** prior to and after the suspected drug transaction between Oscar RUIZ and Distributor 1 showed the device in the vicinity of TL1. Agents believed Oscar RUIZ traveled from TL1 to meet Distributor 1 and then went back to that location.

45.     Between March 14, 2022 and March 15, 2022, agents observed location information for TT1 move from the vicinity of Arizona to Las Vegas, Nevada and returning to Bremerton, Washington on March 17, 2022.

*Traffic Stop of the Distributors in June 2022*

46.     On June 2, 2022, at approximately 2:00 p.m., location information for **TT3** indicated the device was in the vicinity of TL1. Shortly thereafter, agents with DEA

Affidavit of Special Agent Steve Meyer – 15
USAO No. 2022R00847

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Phoenix drove to TL1 and observed a black Chevrolet pickup truck parked in the driveway. Agents were unable to confirm the license plate for the truck but believed it was likely the Chevrolet Silverado registered to Lorenia RUIZ at TL2. Based on location data from **TT3** and the identification of the truck, agents believed Oscar RUIZ was at TL1.

47.     On June 6, 2022, United Magistrate Judge, the Honorable Theresa L. Fricke, authorized renewed GPS tracking and Pens for the phones in the Distributors' case.

48.     On June 10, 2022, at approximately 7:30 p.m., agents observed location information from both Distributors showing their phone in the vicinity of Highway 16 moving east toward SeaTac Airport. Based on previous trips that the Distributors have made, agents believed they had rented a vehicle at the SeaTac airport, which was confirmed by Avis rental cars.

49.     At approximately 11:00 p.m., agents observed location information for TT1 and TT2 moving east along Interstate 90 (I-90). Agents continued to monitor the movement of the phones as they traveled through Washington and Idaho, into Utah, then Nevada, and finally arriving in Phoenix, Arizona on the morning of June 12, 2022.

50.     Agents monitored **TT3**'s location information on the morning of June 12, 2022 and it showed the device in the vicinity of TL1.  At approximately 11:41 a.m., location information from **TT3** showed the device moving east towards Phoenix, Arizona.

51.     Between 12:00 p.m. to 1:00 p.m. PST, location information for TT1, TT2, and **TT3** showed the phones in the same vicinity of Phoenix, Arizona. Shortly thereafter, location information showed TT1 and TT2 still within relative vicinity of each other but **TT3** outside of where it had been. Later that afternoon, location information from TT1 and TT2 showed the phones departing Phoenix and traveling towards Las Vegas, Nevada. Based on location information from TT1, TT2, and **TT3**, agents believed that between 12:00 p.m. and 1:00 p.m., the Distributors met with Oscar RUIZ and were resupplied

Affidavit of Special Agent Steve Meyer – 16
USAO No. 2022R00847

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHIGTON 98402
(253) 428-3800

with narcotics. Location information for all three phones at that time also showed them within the vicinity of TL2.

52.     On June 13, 2022, location information for TT1 and TT2 showed the phones at the Downtown Grand Hotel and Casino at 206 North 3rd Street, Las Vegas, Nevada 89101. The DEA Las Vegas identified the Distributor's rental vehicle at the hotel. Later that day, location information for TT1 and TT2 showed the phones had departed Las Vegas and were moving northwest towards Washington.

53.     On the morning of June 14, 2022, agents identified the Distributor's rental vehicle in Oregon traveling northbound towards Washington. Following that, surveillance was maintained on the vehicle as it traveled from Oregon into Washington.

54.     At approximately 11:37 a.m. PST, officers with the Centralia Police Department (CPD) conducted a traffic stop on the rental vehicle. During the stop, a narcotic trained K-9 was deployed on the vehicle and there was an alert for the presence of narcotics. Following that, CPD personnel detained the Distributors and seized the vehicle pending a state search warrant. Shortly thereafter, CPD personnel were granted a search warrant for the vehicle and the subsequent search resulted in the seizure of approximately 8 pounds of suspected methamphetamine and 2.25 pounds of suspected fentanyl pills.

*Controlled Delivery with Oscar RUIZ*

55.     In late June 2022, agents directed the CS to contact Oscar RUIZ at **TT3** and set up a deal for a thousand M-30 fentanyl pills. Shortly thereafter, the CS informed agents that Oscar RUIZ had agreed to sell him/her a thousand M-30 fentanyl pills for eight hundred and fifty dollars.

56.     On June 30, 2022, agents with DEA Phoenix met with the CS at a neutral location. The CS informed agents that Oscar RUIZ had texted, utilizing **TT3**, and told him/her to meet him (RUIZ) at 43rd and Maryland. Agents believed Oscar RUIZ wanted to conduct the deal at that location because it was near TL2. On the morning of June 30,

Affidavit of Special Agent Steve Meyer – 17
USAO No. 2022R00847

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

2022, agents monitored **TT3**'s location; the device was consistently in the vicinity of TL1.

57.     At approximately 12:56 p.m. Mountain Standard Time (MST), agents observed **TT3** moving east towards Phoenix.

58.     At approximately 1:10 p.m. MST, agents conducted a search of the CS's vehicle and person and provided the CS with the funds to complete the deal. At approximately 1:50 p.m. MST, agents prepositioned at TL2 observed a silver 2014 Chevrolet Impala bearing Arizona license plate CTW0029 (TV1) pull up to TL2. A search of Arizona MVD showed the vehicle was registered to Kimberly BERRONES at TL1. Agents observed a male, later identified as Oscar RUIZ, female, and two kids exit TV1.

59.     At approximately 1:52 p.m. MST, agents observed a different male enter into TV1 and depart TL2.

60.     At approximately 2:04 p.m. MST, the CS departed the neutral location and agents followed him/her to the meet location at the Fry's located at 4230 West McDowell Road, Phoenix, Arizona. Oscar RUIZ informed the CS, using **TT3**, that he would not do the deal at that Fry's location. Oscar RUIZ wanted the CS to come to 43rd and Maryland. Oscar RUIZ stated in a text message "cause my parents live by here and I stay far."

61.     At approximately 2:11 p.m. MST, location information for **TT3** indicated the device was in the vicinity of TL2. Agents, viewing a pre-positioned camera outside of TL2, observed TV1 arrive at the residence at approximately this time. At approximately 2:18 p.m. MST, agents, utilizing a pre-positioned camera, observed TV1 depart TL2 and come back at approximately 2:22 p.m. At approximately 2:34 p.m. MST, Oscar RUIZ asked the CS to come to the vicinity of 43rd Avenue and Bethany Home Road.

62.     The CS arrived at the Fry's at 4353 West Bethany Home Road, Glendale, Arizona. The CS texted Oscar RUIZ his location and Oscar RUIZ responded "k." Agents watched TV1 depart TL2 at 3:03 p.m. MST on the pre-positioned camera.

Affidavit of Special Agent Steve Meyer – 18
USAO No. 2022R00847

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHIGTON 98402
(253) 428-3800

1     63.     TV1 arrived at the deal location at 3:07 and parked next to the CS's

2     vehicle. Agents saw the CS exit his/her vehicle and go to the driver's side window of

3     TV1. A few minutes later, agents aw the CS walk back to his/her vehicle and get inside.

4     Both vehicles then left the area.

5     64.     Agents watched the CS as he/she went back to the neutral location and

6     searched his/her vehicle and person with negative results. Following that, agents

7     conducted a debrief with the CS. They showed him/her a DOL photo of Oscar RUIZ and

8     the CS positively identified Oscar RUIZ as the male who sold him/her the suspected M-

9     30 fentanyl pills. The CS said that Oscar RUIZ said that he (RUIZ) had different kind of

10    pills for sale, including "popcorn."  The CS stated that he/she walked to Oscar RUIZ's

11    vehicle and gave him the money for the deal through the window and Oscar RUIZ

12    handed him/her the bag containing the suspected pills through the driver's side window.

13    65.     At approximately 3:13 p.m. MST, agents, utilizing a pre-positioned camera

14    at TL2, observed TV1 arrive back at the residence and park in the driveway. Following

15    that, agents terminated the operation.

16    <u>**KNOWLEDGE OF CELL PHONE PROVIDERS**</u>

17    66.     Based on my training and experience, I know each cellular device has one

18    or more unique identifiers embedded inside it. Depending on the cellular network and the

19    device, the embedded unique identifiers for a cellular device could take several different

20    forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity

21    Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity

22    Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number

23    ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International

24    Mobile Equipment Identity ("IMEI"). The unique identifiers -- as transmitted from a

25    cellular device to a cellular antenna or tower -- can be recorded by pen-traps and indicate

26    the identity of the cellular device making the communication without revealing the

27    communication's content.

28

Affidavit of Special Agent Steve Meyer – 19
USAO No. 2022R00847

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHIGTON 98402
(253) 428-3800

67.     Based on my training and experience, I know that when a cell phone connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower, and the cellular antenna or tower records those identifiers as a matter of course. The unique identifiers -- as transmitted from a cell phone to a cellular antenna or tower -- are like the telephone number of an incoming call. They can be recorded by pen-trap devices and indicate the identity of the cell phone device making the communication without revealing the communication's content. In addition, a list of incoming and outgoing telephone numbers is generated when a cell phone is used to make or receive calls, or to send or receive text messages (which may include photographs, videos, and other data). These telephone numbers can be recorded by pen-trap devices and then used to identify the parties to a communication without revealing the communication's contents.

68.     Based my training and experience, I know that a cell phone can also be used to exchange text messages with email accounts. The email addresses associated with those text messages can be recorded by pen-trap devices and then used to identify parties to a communication without revealing the communication's contents.

69.     Based on my training and experience, I know that cellular phones can connect to the internet via a cellular network. When connecting through a cellular network, internet communications sent and received by the cellular phone each contain the same unique identifier that identifies cellular voice communications, such as an ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI. Internet communications from a cellular phone also contain the IP address associated with that cellular phone at the time of the communication. Each of these unique identifiers can be used to identify parties to a communication without revealing the communication's contents.

70.     In my training and experience, I have learned T-Mobile are companies that provid cellular telephone access to the general public. I also know that certain providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide

Affidavit of Special Agent Steve Meyer – 20
USAO No. 2022R00847

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

service, including E-911 Phase II data (also known as GPS data or latitude-longitude data) and cell-site data (also known as "tower/face information" or cell tower/sector records). E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the cell towers (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

71.     Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of **TT3**, including by initiating a signal to determine the location of **TT3** on T-Mobile networks or with such other reference points as may be reasonably available.

72.     When using a cellular connection to receive or transmit data, a cellular phone typically utilizes a cell tower to make telephone calls, send or receive text messages, send or receive emails, surf the internet, carry out application initiated data transfers, among other things.

73.     Based on my training and experience, I know that T-Mobile can collect cell-site data about **TT3**. Based on my training and experience, I know that for each communication (including data connections) a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data

1    pertaining to cellular devices to which they provide service in their normal course of

2    business in order to use this information for various business-related purposes.

3         74.     Different service providers use different systems, applications, and reports

4    to collect or analyze cell site data. These systems, applications, and reports are referred to

5    by a variety of names including, but not limited to real-time tool or "RTT" (Verizon),

6    Periodic Location Updates or "PLU" (Verizon), per call measurement data or "PCMD"

7    (Sprint PCS), Network Event Location System or "NELOS" (AT&T), EVDO, ALULTE,

8    Timing Advance, and TruCall. RTT data, for example, estimates the approximate

9    distance of the cellular device from a cellular tower based upon the speed with which

10   signals travel between the device and the tower. This information can be used to estimate

11   an approximate location range that is more precise than typical cell-site data.

12        75.     Based on my training and experience, I know that wireless providers such

13   as T-Mobile typically collect and retain information about their subscribers in their

14   normal course of business. This information can include basic personal information about

15   the subscriber, such as name and address, and the method(s) of payment (such as credit

16   card account number) provided by the subscriber to pay for wireless communication

17   service. I also know that wireless providers such as T-Mobile typically collect and retain

18   information about their subscribers' use of the wireless service, such as records about

19   calls or other communications sent or received by a particular device and other

20   transactional records, in their normal course of business. In my training and experience,

21   this information may constitute evidence of the crimes under investigation because the

22   information can be used to identify **TT3's** users and may assist in the identification of co-

23   conspirators and/or victims.

24        76.     Modern cell phones allow users to switch their telephone numbers, use

25   multiple telephone numbers on a single device, and transfer their telephone number to a

26   different cell phone. These changes can be made with the assistance of the wireless

27   provider or by taking actions such as changing the "SIM card" (short for "subscriber

28   identity module card") of a cellphone. To provide for any such changes made to **TT3**,

Affidavit of Special Agent Steve Meyer – 22
USAO No. 2022R00847

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHIGTON 98402
(253) 428-3800

1   Attachment A specifies that the property to be searched includes: (i) any instrument to

2   which the listed target telephone number was assigned within the last 30 days, and that

3   now has been assigned a changed telephone number, (ii) any changed telephone number

4   assigned to an instrument now bearing the same unique identifying number (such as an

5   IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing

6   the same unique identifying number as the telephone number listed above, at any point

7   within the last 30 days, (iii) any changed unique identifying number subsequently

8   assigned to the same telephone number, or (iv) any additional changed telephone number

9   and/or unique identifying number, whether the changes occur consecutively or

10   simultaneously, listed to the same subscriber and wireless telephone account number as

11   the telephone numbers listed above, within the period of disclosure authorized by this

12   warrant.

### AUTHORIZATION REQUEST

14       77.    Based upon the facts contained in this Affidavit, I submit that probable

15   cause exists to believe that **TT3** is being used to facilitate the criminal activities of Oscar

16   RUIZ. I further believe that the RUIZ is engaged in criminal activity, including drug

17   possession/distribution and that **TT3** is being used by the RUIZ to facilitate such

18   activities. I believe that information obtained from the requested pen register and trap and

19   trace device and real-time GPS location data on **TT3** will be relevant to the ongoing

20   investigation in that it will assist in identifying other frequented locations of RUIZ for

21   further investigation and future physical surveillance and search warrants.

22       78.    Based on the foregoing, I request that the Court issue the proposed search

23   warrant and pen-trap order, pursuant to Federal Rule of Criminal Procedure 41, 18 U.S.C.

24   § 2703(c), and 18 U.S.C. § 3123.

25       79.    I further request that the Court direct T-Mobile to disclose to the

26   government any information described in Attachment B that is within the possession,

27   custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish

28   the government all information, facilities, and technical assistance necessary to

Affidavit of Special Agent Steve Meyer – 23
USAO No. 2022R00847

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHIGTON 98402
(253) 428-3800

accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of **TT3** on T-Mobile networks or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The agency shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

80.     Pursuant to 18 U.S.C. § 2703(g), the government will execute this warrant by serving the warrant on T-Mobile. Because the warrant will be served on T-Mobile, who will then compile the requested records and data, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I therefore request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate **TT3** outside of daytime hours.

## REQUEST FOR DELAYED NOTICE

81.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice to the subscriber or user of **TT3** until 90 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of **TT3** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

Affidavit of Special Agent Steve Meyer – 24
USAO No. 2022R00847

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHIGTON 98402
(253) 428-3800

## REQUEST FOR SEALING

82.    I further request that the Court order that all papers in support of this Application, including the Affidavit, Search Warrant, and Pen/Trap Order, and all related documents, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Steven Meyer, Affiant
Special Agent, DEA

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit by telephone on the 29th day of July, 2022.

J. RICHARD CREATURA
United States Chief Magistrate Judge

Affidavit of Special Agent Steve Meyer – 25
USAO No. 2022R00847

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**EXHIBIT 1**

DECLARATION

I, Hillary K. Stuart, declare as follows:

1.     I am a duly appointed Assistant United States Attorney for the Western District of Washington, and I have primary responsibility for representing the interests of the United States herein.

2.     I make this declaration in support of an Application for a search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) with an integrated pen-trap order pursuant to 18 U.S.C. §§ 3122 and 3123. Pursuant to 18 U.S.C. § 3122(a)(1), I am the applicant for purposes of the pen-trap portion of the requested warrant and order.

3.     Pursuant to 18 U.S.C. § 3122(b), I certify that the DEA is the law enforcement agency conducting the investigation in this matter and that the information likely to be obtained from the requested warrant is relevant to an ongoing criminal investigation being conducted by that agency.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing Application is made on the basis of information officially furnished, and on that basis I verily believe such information to be true.

Executed this 29th day of July, 2022.

/s/ Hillary K. Stuart
HILLARY K. STUART
Assistant United States Attorney

EXHIBIT 1 -- PAGE 1
USAO No. 2022R00847

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHIGTON 98402
(253) 428-3800

# ATTACHMENT A

## Property to Be Searched and Subscriber/Subject Information

1.      Records and information associated with the following cellular phone: **(928) 327-8573**, with a subscriber name of CHEKO LL at 4136 West Maryland Avenue, Phoenix, Arizona 85019, activated on January 15, 2021, and service provided by T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey (hereinafter referred to as Target Telephone 3 or **TT3**). **TT3** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B. Agents believe **TT3** is currently being used by Oscar RUIZ, who agents believe is conspiring with members of the Distributors DTO and others unknown;

2.      The Target Cell Phone (**TT3**).

3.      The property to be searched includes: (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

ATTACHMENT A - 1
USAO No. 2022R00847

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          **ATTACHMENT B**

2          **Particular Things to be Seized**

3          This warrant is issued pursuant to Rule 41 of the Federal Rules of Criminal

4    Procedure, the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-

5    2713, and the Pen Register Act, 18 U.S.C. §§ 3121-3127. As such, this Warrant

6    authorizes the collection of subscriber records, pen-trap data, real time GPS location

7    information, and real time cell site data information regarding the Target Cell Phone

8    (**TT3**). **This warrant does not authorize the disclosure or seizure of any tangible**

9    **property or the content of any wire or electronic communication, as defined in 18**

10   **U.S.C. § 2510(8).** Accordingly, the Court finds reasonable necessity for the seizure of the

11   data and records identified below. *See* 18 U.S.C. § 3103a(b)(2).

12   **I.      Information to be Disclosed by T-Mobile**

13   **1.      Pen Register / Trap and Trace Data and Associated Subscriber**

14   **Records to Be Provided for a Period of 45 Days for TT3.**

15          a.      T-Mobile shall install and monitor pen-trap devices to record,

16   decode, and/or capture dialing, routing, addressing, and signaling information

17   associated with each communication to or from the Target Cell Phone (**TT3**)

18   including the date, time, and duration of the communication, and the following,

19   without geographic limit and without notice to the subscriber:

20                  (i)      IP addresses associated with the cell phone device or devices

21          used to send or receive electronic communications;

22                  (ii)      Any unique identifiers associated with the cell phone device

23          or devices used to make and receive calls with the cell phone number

24          described in Attachment A, or to send or receive other electronic

25          communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN,

26          or MIN;

27                  (iii)      IP addresses of any websites or other servers to which the cell

28          phone device or devices connected; and

ATTACHMENT B - 1
USAO No 2022R00847

(iv)     Source and destination telephone numbers and email addresses.

b.      On a 24-hour-a-day basis, for the duration of the authorized pen-trap devices, T-Mobile shall provide the following records for those subscribers whose identifiers are obtained pursuant to the use of the pen-trap devices: published or non-published subscriber names and addresses, including billing addresses.

**2.      Prospective Cell Site Location Information for TT3.**

a.      All information about the location of the Target Cell Phone (**TT3**) described in Attachment A for **a period of 45 days**, during all times of day and night. This information includes: precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A.

b.      The physical address and coverage maps of cell towers used by the Target Cell Phone (**TT3**).

**3.      Prospective E-911/GPS and Cell Site Triangulation Information for TT3.**

a.      All information about the location of the Target Cell Phone (**TT3**) described in Attachment A for **a period of 45 days**, during all times of day and night. This information includes: all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A.

b.      The physical address and coverage maps of cell towers used by the Target Cell Phone (**TT3**).

To the extent that the location information described in the previous paragraphs (hereinafter, "Location Information") is within the possession, custody, or control of T-

ATTACHMENT B - 2
USAO No 2022R00847

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Mobile, T-Mobile is required to disclose the Location Information to the government pursuant to this warrant. In addition, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

## II.      Information to Be Seized by the Government

1.      All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 841, 846, and related crimes involving the user of **TT3**.

2.      All non-content subscriber/account information provided pursuant to 18 U.S.C. § 2703(c) regarding the Target Cell Phone **TT3**.

3.      All non-content dialing, routing, addressing, and signaling information provided pursuant to 18 U.S.C. §§ 3121-3127 regarding Target Cell Phone (**TT3**).

4.      Location Information regarding the Target Cell Phone (**TT3**).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by T-Mobile in order to locate the things particularly described in this Warrant

ATTACHMENT B - 3
USAO No 2022R00847

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800